UNITED STATES DISTRICT COURT
FOR THE Northern District of Illinois
Eastern Division

| | | |
|---|---|---|
| SUSAN ROWE MAZZORANA, | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| MICHELE DORR KELLY, | ) | |
| | ) | |
| Defendant | ) | |

COMPLAINT AT LAW

Now come the Plaintiff, SUSAN ROWE MAZZORANA ("Susan"), by and through her attorney, LAW OFFICE OF JOEL RABB & ASSOCIATES, as and for their Complaint against Defendant, MICHELE DORR KELLY ("MICHELE"), state as follows:

PARTIES

1.      Plaintiff, SUSAN ROWE MAZZORANA ("SUSAN"), is an individual who at all times was residing in the State of Illinois.

2.      Defendant MICHELE DORR KELLY ("MICHELE") is an individual currently residing in Burr Ridge, DuPage County, Illinois.

FACTS COMMON TO ALL COUNTS

3.      Leo Kelly was married to MICHELE.

4.      On or about January 7, 2017, a Judgment for Dissolution of Marriage was entered in the Circuit Court of DuPage County dissolving the marriage between MICHELE and Leo.

5.      Leo is the former Chief Executive Officer of a publicly traded company.

6.      On or about June 2019, SUSAN began a dating relationship with LEO.

1

7. Leo and SUSAN communicate with each other both through email and text messages.

8. Leo communicates with his attorneys, business associates, doctors, mental health providers, and other third parties through both email and text messages.

9. Leo communicated repeatedly through email and text messages with his attorneys, business associates, doctors, mental health providers, and other third parties, wherein MICHELE was not the intended recipient of said communications both before and after their divorce.

10. Leo and MICHELE have four (4) children.

11. According to MICHELE, one of their children was in possession of an iPad.

12. Leo has had limited contact with his children since the divorce.

13. From the time of the entry of the Judgment for Dissolution of Marriage, the parties' four children exclusively resided with MICHELE, except for Leo Aidan Kelly ("Aidan") who resided with Leo in July of 2020.

14. MICHELE informed Leo that since Aidan was living with him, she no longer was willing to pay for Aidan's cell phone.

15. In July of 2020, Leo took Aidan to a Verizon Wireless retailer ("Verizon") to purchase a new phone.

16. Leo contacted Verizon and spoke to a company representative with whom he reviewed his accounts. After reviewing the accounts Leo learned that he was paying for an iPad that was not in his possession, but rather, was in the possession of one of his children. MICHELE took possession of this iPad, which was linked to Leo's Verizon account, and she began using it.

17.     Leo, through his own research, determined that his iCloud account had forwarded communications to other devices, which are currently signed into his iCloud Account, including the iPad in the possession of one of his children.

18.     Leo emailed MICHELE demanding that she stop using his old iPad and further stated that it was not intended for her use.

19.     MICHELE replied to the email: "why?" Said response is attached as Exhibit "A".

20.     After Leo deleted his iCloud account, a third party had attempted to log into the same iCloud account on two (2) separate occasions.

21.     Upon information and belief, MICHELE was the person who attempted to log into the account.

22.     Upon information and belief, MICHELE attempted to log into Leo's iCloud account but was unsuccessful because Leo changed the password.

23.     Upon information and belief, MICHELE reviewed Leo and SUSAN's private emails and text messages for years. Those emails and text messages were intended for business associates, lawyers, mental health care providers, doctors, and persons who Leo was dating.

24.     Leo and SUSAN have sent emails and texts between each other of a private nature, including pictures and details regarding their personal relationship.

25.     Leo is currently engaged in post-decree domestic relations litigation with MICHELE in the Circuit Court of DuPage County, Illinois.  I want to take this out

26.     On or about February 4, 2021, MICHELE was deposed by Leo's attorneys.

27.     MICHELE while under oath was asked the following question: "Did you read Leo's ("Kevin") texts or e-mails subsequent to the divorce?"   Answer: "Did I read his texts or e-mails? Possibly upon occasion, yes."

28.     MICHELE while under oath was asked the following question: "Did you read his personal emails or texts?" Answer: "If they came across my phone or my iPad."

29.     MICHELE while under oath was asked the following question: "Would that have been the only way you would have had access to his e-mails or texts?" Answer: "I believe so."

30.     MICHELE while under oath was asked the following question: "Have you had access to Leo's emails or texts through the use of your children's iPads?" Answer: "My children's iPads?" Question: "Yes?" Answer: "They're my iPads."

31.     MICHELE while under oath was asked the following question: "Well, the iPads that your children use.  Have you had access to Leo's e-mails or texts?" Answer: "In the past." Question: "When?" Answer: "I don't recall."

32.     MICHELE while under oath was asked the following question: "When have you reviewed Leo's e-mails or texts subsequent to the divorce?"  Answer: "I do not recall."

33.     MICHELE while under oath was asked the following question: "How frequently have you done that?" Answer: "I don't recall."

34.     MICHELE while under oath was asked the following question: "Did Leo authorize you to read any of his e-mails or texts subsequent to the divorce?"  Answer: "He doesn't need to when they pop up on my device."

35.     MICHELE while under oath was asked the following question: "Do you recall the content of these emails or texts?" Answer: "No."

36.     MICHELE while under oath was asked the following question: "Do you believe the content of the texts or emails were of a private nature?" Answer: "I don't know."

37.     MICHELE while under oath was asked the following question: "Do you know how your review of his texts and emails affected Leo?" Answer: "No. How would I know?"

38.     MICHELE while under oath was asked the following question: "Did Leo tell you to stop doing it?" Answer: No."

39.     After confirming that MICHELE was reading Leo's texts message and emails, Leo sent a preservation letter to MICHELE'S attorney requesting that MICHELE preserve evidence, including but not limited to all of MICHELE'S devices so that Leo could determine which emails and texts she reviewed of which she was not the intended recipient.  Preservation Letter Attached as Exhibit "B".

40.     Upon information and belief, MICHELE was reviewing Leo's text messages and emails for years, including but not limited to those intended for persons that Leo dated, including SUSAN, business associates, doctors, mental health care providers, and attorneys before and after the entry of the Judgment for Dissolution of Marriage.

<u>COUNT I</u>

<u>VIOLATION OF 15 U.S.C.A. § 2511</u>

41.     Plaintiffs re-allege paragraphs 1-40 as if fully incorporated herein *verbatim*.

42.     MICHELE intentionally intercepted, and endeavored to intercept, Leo's emails and text messages.

43.     Upon information and belief, MICHELE intentionally intercepted, and endeavored to intercept, SUSAN's emails and text messages.

44.     SUSAN's emails and text messages were sent to others via electronic means through her computer and smart phone.

45.     MICHELE was not the intended recipient of said emails or text messages.

46.     MICHELE intercepted SUSAN's emails and text messages by obtaining these communications through a device that she had in her possession and control; however, she did not have authority at any time to read or otherwise access his emails or text messages.

47.     MICHELE was not the intended recipient of text messages or emails from SUSAN to LEO.

48.     Upon information and belief, MICHELE intercepted SUSAN's emails and text messages by obtaining them through a device that she had in her possession and control; however, MICHELE did not have SUSAN's authority at any time to read or otherwise access her emails or text messages.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor, and against Defendant, and grant the following relief:

A.      Enter judgment in favor of Plaintiff and against Defendant, in excess of One Million Dollars ($1,000,000) in damages, plus additional amounts to be proved at trial.

B.      Enter judgment in favor of Plaintiff and against Defendant MICHELE DORR KELLY, awarding punitive damages in an amount to be determined by the court.

C.      Order the Defendant, MICHELE DORR KELLY, to pay Plaintiffs' attorney's fees.

D.      For such other and further relief as this court deems just and equitable.

## COUNT II

## INTRUSION BY SECLUSION OF ANOTHER

49.     Plaintiffs re-allege paragraphs 1-48 as if fully incorporated herein *verbatim*.

50. Leo both emailed and texted private matters regarding his health, family, employment, financial, and personal interests. Leo texted and sent emails regarding his relationship with SUSAN.

51. SUSAN both emailed and texted to Leo matters concerning their private relationship.

52. MICHELE did not have authority from either Leo or SUSAN to review or obtain any of Leo or SUSAN's emails and text messages.

53. Upon information and belief, MICHELE has been reviewing SUSAN's emails and/or text messages since approximately 2019.

54. Upon information and belief, MICHELE was reviewing Leo's emails and text messages between he and his lawyers during his Dissolution of Marriage proceedings, and subsequent to the entry of the Judgment of Dissolution of Marriage as well.

55. MICHELE's intrusion into SUSAN's personal relationship with Leo is highly offensive, and would be objectionable to a reasonable person.

56. SUSAN has suffered emotional harm since learning that MICHELE accessed and reviewed her private communications with Leo.

WHEREFORE, Plaintiff respectfully request that the Court enter judgment in her favor, and against Defendant, and grant the following relief:

A. Enter judgment in favor of Plaintiff and against Defendant, in excess of One Million Dollars ($1,000,000) in damages, plus additional amounts to be proven at trial.

B. Enter judgment in favor of Plaintiff and against Defendant MICHELE DORR KELLY, awarding punitive damages in an amount determined by the court.

C. Order the Defendant, MICHELE DORR KELLY, to pay Plaintiffs' attorneys' fees.

D.     For such other and further relief as this court deems just and equitable.

<u>COUNT III</u>

<u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>

57.     Plaintiffs re-allege paragraphs 1-56 as if fully restated herein *verbatim*.

58.     MICHELE's conduct as described herein was extreme and outrageous.

59.     Upon learning of MICHELE's conduct, SUSAN has suffered emotionally from her actions.

60.     MICHELE's monitoring of Plaintiff's most private communications is extreme and outrageous.

61.     MICHELE's actions were reckless and without regard for the Plaintiffs' emotional well-being.

62.     Plaintiff has suffered emotional distress as a result of MICHELE's actions as described herein.

63.     SUSAN has utilized the services of a mental health professional as a result of MICHELE's actions.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor, and against Defendant, and grant the following relief:

A.     Enter judgment in favor of Plaintiff and against Defendant, in excess of One Million Dollars ($1,000,000) in damages, plus additional amounts to be proven at trial.

B.     Enter judgment in favor of Plaintiff and against Defendant, MICHELE DORR KELLY, awarding punitive damages in an amount to be determined by the court.

C.     Order the Defendant, MICHELE DORR KELLY, to pay Plaintiffs' attorneys' fees.

D.     For such other relief as this court deems just and equitable.

RESPECTFULLY SUBMITTED BY:

_____

ATTORNEY FOR PLAINTIFF

Joel Rabb
LAW OFFICE OF JOEL RABB & ASSOCIATES
111 West Washington Street, Suite 1750
Chicago, IL  60602
Phone:  312-858-4350
Email: joel@joelrabblaw.com
ARDC No.: 6305201